Reeds vs. Morton.

REEDS vs. MORTON.

1. The provision in the act of 1825, regulating the levying, assessing and collecting the revenue, which requires the certificate of the sale of land for taxes, to be recorded, was to give to the owner of the land additional means of ascertaining that his land had been sold.

2. The court adheres to the opinion heretofore expressed in this case, "that the law regulating the sale of land for taxes, must be strictly complied with; and that the pre-requisites to authorize a deed to be made, must be shewn, or the deed will be void.

3. The act requires the certificate of sale to be recorded; it must have been done in reasonable time, or the deed will be void.

4. When the certificate was not recorded until after the time of redemption had expired, and a deed been made, will not be affected by being recorded. The deed will be void.

APPEAL from Lincoln Circuit Court.

TOMPKINS, JAMISON & WELLS, for Appellant,

Reeds vs. Morton.

Make the following

POINTS.

1. The collector's bond ought to have been read. It tended to prove that the collector was legally in office. The only objection to it is that it was not recorded—this does not avoid the bond or nullify the acts of the collector. The law is only directory.

2. The exhibit (A) in Barcroft's deposition, ought to have been read as a part of the deposition. The testimony of Parker, the clerk, shows that the exhibit was enclosed, sealed up and directed to the clerk, in conformity with the "act concerning depositions." See Digest, p. 220, sec. 18. The deposition referred to it, as "a duly authenticated copy." It was correctly described—the marking and referring to, was a sufficient authentication.

3. The parol evidence of the witnesses to prove the setting up of notices, and their contents, ought to have been admitted. The original notices could not be had—every reasonable exertion had been used to get one. It is true that the defendant had not searched everywhere, but he had searched, and searched where it was most likely to be found. The setting up could only be proved by parol evidence.

4. The auditor's certificate and deed were competent evidence. They were the acts of a public officer, made in conformity to law, and ought to have been admitted without proof of execution. They were acknowledged and recorded, and ought to have been read under the statute. See act on conveyances, p. 123, sec. 35.

It was objected to on the ground that it did not shew title out of the plaintiff. If true, this objection is not to its competency or relevancy, but to its sufficiency. It will not do to exclude evidence because it is insufficient. The court judges of its competency—the jury of its sufficiency.

5. The notice of lands sold in 1833, tended to explain Sitton's evidence as to the year he set up notices. He stated that he set them up in 1832 or '33. The notice shows it was not in 1833—it was therefore in '32.

6. A new trial ought to have been granted, because had the court not committed the errors above mentioned in the exclusion of proper evidence, the defendant ought to have had a verdict. He had proven, *first*, the appointment of an assessor; *second*, the assessment; *third*, the correction by the county court of the assessor's list; *fourth*, the appointment of a collector; *fifth*, the non-residence of Paul Chouteau; *sixth*, the

Reeds vs. Morton.

non-payment of the tax; *seventh*, the return of the delinquent list to the auditor; *eighth*, the advertisement of the auditor's sale, both in the newspaper, and in the county of Lincoln; *ninth*, the sale of the auditor; *tenth*, his certificate thereof and conveyance; and *eleventh*, the recording the notice of sale by the clerk of Lincoln circuit court, as also the recording the auditor's certificate and deed. All these things were shewn by the evidence to have been done in strict conformity with the statute law.

It is also insisted by plaintiff in error that the auditor's deed and certificate, that the provisions of the law had been complied with, were sufficient evidence to shew title out of the plaintiff.

1. It is admitted that to make a sale of land for taxes valid, the statute authorizing such sale must be pursued.

The main question is, how is that conformity to the statute to be proven.

2. We hold that when a public officer has acted in the discharge of an official duty, the legal presumption is, that his act is done in conformity to the law—that all pre-requisites of the act have been complied with.

3. That that legal presumption applies as well to the validity of the act done, as to his own personal indemnity and security; that the principle may be invoked as well by the person who claims under the officer, as by the officer himself.

From these premises it follows, that the sale of the auditor pre-supposes the return to him of a non-resident delinquent list, because upon the return of such list only, could he have power to sell. *Second*, that the return of such "list" pre-supposes assessment, and that the person assessed was a non-resident, because upon the existence of these facts only, was the collector authorized to return such list, &c. *Third*, that the action of the assessor as such, and the action of the collector as such, prove that they were duly appointed respectively to said offices.

We therefore conclude that the exhibition of the auditor's deed proves *prima facie* that all the pre-requisites of that sale had been complied with. But, *second*, if this be not the law of evidence, the legislature have full power to change the law. And we insist that the legislature have enacted that the certificate of the auditor, "that the provisions of the law have been complied with," shall be evidence of such compliance.

The auditor has made such certificate, and it has been recorded.

BATES, for Appellee.

This is the same case of Morton vs. Reed heretofore acted upon by

this court, see 6 Mo. R. p. 64,) and the principal questions for determination are the same now as then.   There arose, however, at the last trial,  and now. appear  upon the record  several minor questions, which have to be disposed of, although none of them seem to me to affect the legal merits of the cause, so far as to be capable of changing the result.

These  minor  questions relate  to the exclusion of certain pieces of testimony offered by the defendant, (the appellant here,) and excluded by the court, and with regard to them the appellee says :

1. The bond of Henry Watts, collector of the revenue for Lincoln county, to the governor, was rightly excluded, because it was irrelevant. It had nothing to do with the case.   He would have been no less a collector had he never given a bond—besides one bond was already in evidence.

2. The document marked exhibit (A) offered along with the deposition  of E. Barcroft, and  purporting to be a copy of the delinquent tax list, was rightly excluded, because, *first*, it is not annexed to the deposition, nor in any manner connected therewith, though declared therein to be annexed ; *second*, it appears on the face of the document, and in the certificate of  authentication—that it is interpolated and altered from its original condition.

3. The defendant, having failed to produce in evidence either the original, or a copy of the auditor's advertisement of sales for taxes, the court was right in excluding the oral testimony of the contents thereof, which the defendant offered to produce.

I need not cite authorities to prove that the best evidence the nature of the case admits of, must be given; and that to warrant the introduction of the inferior sort, it must be shewn that all proper diligence has been used to get the superior.   Here no diligence was used—the party was supine—he and his counsel enquired in some two or three places only ; yet the law shows that the advertisement must have circulated co-extensively with the State ; every county being entitled to several copies ; to say nothing of the general circulation of the paper in which it was printed.   But if I be wrong in regard to any one or more of the above points, still, if the court see from the whole record that the judgment is for the right party, the judgment will not be reversed for a harmless error. The court excluded from the jury both the certificate of sale, and the deed made by the auditor to Jos. R. Suggitt, for the land in question, and this was right; because, *first*, this cause presents to the court precisely the same questions as would have been presented, if the documents had been admitted, and an instruction given that they passed title; *second*, the auditor's sale to Suggitt, is illegal and void—

because, *first*, the proceedings being by legislative act in derogation of common right, the statute itself must be strictly construed against the power; *second*, being *exparte*, and under special authority, the greatest strictness is required, nothing can be presumed in favor of the act, but every requirement of the law must be complied with. 4 Pet. R. 349; 5 Cond. R. 28; 2 Cond. R. 151; 4 Cond. R. 395; 19 J. R. 7; 20 Wend. 241; and see especially Cook & Thurston vs. Peebly, 8 Mo. Rep. 344; 4 Hill (N. Y.) R. 92; and ib. 76; see also this same case in 6 Mo. R. 64.

The defendant should have proved that the tax remained unpaid, but has not done it; Barcroft's deposition only says it was not paid to him.

4. The certificate of the auditor, under the act of 3d Jan., 1827, cannot help the defendant's title, because, *first*, the certificate is not such as the law requires—it states broadly that the requisites of the law have been complied with; whereas it should have stated facts, and left the court to judge what the law requires; *second*, but if it were in the best form, it could only authenticate the facts of which the auditor has official cognizance, and not facts foreign to his office. U. S. vs. Jones, adm'r of Orr, 8 Pet. R. 375; 1 Mo. R. 537; 2 Bibb R. 573; Acts 1826-7, 149.

5. There is no proof of any legal advertisement of the auditor's sale: and *first*, the copy stated in the record, (as Barcroft's deposition, and in the certificate of sales under the act of 1827,) is defective in itself, and there is no proof of its being printed and published; *second*, it is not proved that three copies were sent to, and set up by the sheriff, as required by the act of 18th Jan., 1831, § 4.

6. By the copy of advertisement and certificate of purchase, it appears that the auditor sold the land not only for taxes and penalties, but for interests and costs, which was illegal.

7. It appears by the record, that the land was sold not only for State and county taxes, interest, penalties and costs, but for two additional taxes imposed by the act of 3rd January, 1827, § 20, which additional taxes were illegal, not being *ad valorem*, as required by the constitution, art. 13, § 9.

8. The land could not be sold for the non-payment of taxes, until there was an ascertained defect of personal property. R. C. of '25, § 21 to 28, title Revenue.

By § 27, the collector had a general power to distrain goods. But if no such power were expressly given, it is a necessary incident to the power and duty to collect taxes.

9. The goods being first liable, the land could not be sold without an

official return or statement, and that on the record, of *nulla bona.* 2 Cond. R. 151; 5 Cond. R. 28; 4 Pet. R. 366.

10. Supposing the auditor's sale formal and regular, still, the defendant's title deeds are invalid as against the plaintiff, for want of record. See the date of the recording of the deeds, and R. C. of 1825, p. 674, § 28; and same code, p. 221, § 14.

N. B. The auditor's certificate of sale to Suggitt bears date June 20th, 1832; recorded, January 13, 1836.

The deed from the auditor to Suggitt, under the certificate, bears date June 25th, 1834; recorded 14th January, 1836.

Scott, J., delivered the opinion of the court.

This was an action of ejectment brought by Morton to recover the possession of a tract of land containing two thousand arpents, situated in Lincoln county, in which Morton recovered judgment.

Morton claimed under Paul Chouteau, to whom a concession was made by the Spanish gavernment, which was afterwards confirmed to him by the authority of the laws of the United States. Chouteau conveyed to Laveille and Morton, for the sum of three thousand two hundred and fifty dollars; and Laveille to Morton, for the sum of three thousand four hundred and forty dollars.

Reeds claimed the land in controversy under Joseph R. Suggitt, who claimed under a deed from the auditor of public accounts, which was executed on the 25th June, 1834 in pursuance of a certificate of sale made to the said Suggitt, which bore date on the 20th day of June, 1832, for the non-payment of the State and county taxes due on the said land for the year 1831. The amount of the taxes, penalties and costs was nine dollars and seventy-seven cents. The certificate of sale was recorded on the 13th January, 1836, and the deed of the auditor on the 14th Jan'y of the same year. The deed of the auditor was acknowledged, but the certificate was placed on record without acknowledgment.

After a great deal of testimony had been offered in evidence, much of which was rejected, the certificate and deed above referred to were produced in evidence to the court, and were rejected, to which exceptions were taken by the defendant Reeds, who has brought this case here.

The merits of the case depending on the facts above set out, and as the defendant cannot maintain his defence without showing the validity of the certificate and deed above referred to, we do not deem it neces-

sary even to state, much less to determine, the many points which have been raised in the argument of this cause.

The 28th section of the act to provide for levying, assessing and collecting State and county taxes, approved March 1st, 1825, after prescribing the manner in which the several collectors of the revenue shall sell the lands of delinquent residents who fail to pay their taxes, directs that the collector shall deliver to the purchaser of any tract of land or lot, or any part thereof, a certificate of such sale, which certificate shall be recorded in the same manner as deeds for lands; and from and after the time of such sale, the lands and lots so sold shall be assessed to, and the taxes paid by the purchasser.

The 31st sec. of the same act prescribes that lands thus sold may be redeemed by the owners thereof within two years from and after the sale, and directs that if they are not redeemed within that time, a deed shall be made to the purchaser by the collector.

The 26th sec. of the same act, modified by the act of January 23d, 1829, prescribes the manner in which the auditor shall conduct the sale of delinquent non-resident lands, and after directing that they shall be advertised and sold for the taxes, penalties, &c., proceeds to enact that in all other proceedings relating to the sale of said lands, the auditor shall perform the like duties as are required by this act of the collector, in case of sales made by him, and all subsequent proceedings had thereon shall be as is required by this act, in case of lands sold by the collector, and the auditor performing in that behalf the duties enjoined on collectors in the cases aforesaid.

The 29th section of the same act makes it the duty of the collector immediately after a sale for taxes, to make out and certify duplicate lists of sales made by him to individuals, specifying the name of the person to whom sold, describing the land sold, &c.; one of which lists so certified he shall deliver to the clerk of the county court, and the other to the recorder of the county, and the clerk and recorder shall keep such lists in their offices for the inspection of any person interested.

The 11th section of the act of Jan'y 3, 1827, amendatory of the preceding act relative to the assessing and collecting State and county taxes, as modified by the act of Jan'y 23d, 1829, makes it the duty of the auditor, upon all sales of real estate for the taxes due thereon, to transmit to the recorder of the county wherein the real estate is situated, a copy of the advertisement of sale, certified to be a true copy, and a further certificate that the provisions of the law in such cases made and provided, have been complied with; which advertisement and certificate shall be recorded by the recorder among the deeds, and a copy

of such record shall be *prima facie* evidence of the facts contained in such certificate, whenever a sale made under such advertisement shall come in question; and the certificate of sale to be given to the purchaser in such case, shall always refer to the advertisement of record under which such sale was made.

This case was once before in this court, (6 Mo. R. 64,) and on the authority of the case of Williams vs. Peyton's lessee, 4 Wheat. 77, a principle was established by a majority of this court, to which we still adhere. The defendant in that case, claimed the land as a purchaser at a sale made for the non-payment of a direct tax imposed by act of Congress. On the trial the defendant proved that the tax had been assessed against the plaintiff on the land in dispute, and also gave in evidence the deed of the officer. It was also shown that the plaintiff had not paid the tax, nor redeemed the land, and then it was contended that the evidence was enough to show that the land had been duly advertised by the collector, and that the other requisites of the law had been complied with, so as to warrant the execution and delivery of the deed. But the court, Marshall, C. J., delivering the opinion, held otherwise, saying, that as the collector had no general authority to sell lands at his discretion for non-payment of tax, but a special power to sell in particular cases described by the act, those cases must exist, or the power does not arise. It is a naked power, not coupled with an interest, and in all such cases, the law requires that every pre-requisite to the exercise of that power, must precede its exercise. The agent must pursue his power, or his act will not be sustained by it. As to the deed being evidence of the acts which ought to have preceded it, it was said, that the party who sets up a title must furnish the evidence necessary to sustain it; that if the validity of a deed depends on an act in *pais*, the party claiming under it, is as much bound to prove the performance of the act, as he would be to prove any matter of record, on which the validity of the deed might depend. It forms a part of the title; it is a link in the chain which is essential to its continuity, and which it is incumbent on him to preserve. A person should examine these facts before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title. Therefore the deed in such cases is unavailing entirely, unless the performance of the pre-requisites to the giving it be affirmatively shown. A similar doctrine has been asserted in other cases in the supreme court of the United States. Stead's ex'r vs. Conage, 4 Cr. 403; Parker vs. Rules' lessee, 9 Cr. 64. In the case of Jackson vs. Sheperd, 7 Cow. 88, the supreme court of New York, speaking of the case of Williams vs. Peyton, says,

the principles on which it is founded are of general authority and application, and seem to be incontrovertible.

The court of appeals in the State of Virginia, in the case of Nalle vs. Fenwick, 4 Ran., maintain the same principle, and hold that when land is sold by a sheriff for the non-payment of taxes, it is incumbent on the purchaser to show that all the steps have been regularly taken, which the law requires in such cases.

The same principle prevails in New Hampshire, 3 N. H. Rep. 340, Waldron vs. Tuttle, and is recognized in Louisiana, 6 Mar. Nancarrow vs. Weathersbee.

The case of Ives vs. Lynn, 2 Conn Rep. and the case of Hickman vs. Skinner, 3 Mon. 311, and others in Kentucky, maintain a contrary doctrine, but we do not think their weight is sufficient to overturn the authority of the above cited cases determined by the first courts of the Union, and warranted by principles of law.

The case of Pejupscut vs. Ranson, 14 Mass. 147, affords no aid or authority to the above cited cases from Connecticut and Kentucky. In that case the purchaser, and those claiming under him, had been in possession of the land in controversy since the sale, and for upwards of thirty years; the deed of the officer was read in evidence, and the facts and circumstances going to show that the pre-requisites of the law had been complied with, were left to the jury, with an instruction that they might presume every thing required by law had been done, from the great length of time which had intervened between the sale and the commencement of the suit. This case evidently rests on a different principle from those above cited.

We adhere to the foregoing doctrine asserted when this case was formerly in this court. That the officer in making a sale of lands for the non-payment of taxes, has a mere power which must be strictly pursued, and all the prerequisites must be shown to have existed which were necessary to have enabled him to exercise it in a valid manner. We do not pretend, however, that this principle of law cannot be modified or abolished, as to the wisdom of the legislature may seem best. To what extent it was modified or altered by the 11th sec. of the act of January 3d, 1827, we do not now think it necessary to determine. Whether it was intended that the further certificate provided for by that section should be *prima facie* evidence that the law had been complied with so far as the acts of the auditor were concerned, or whether it was intended to be evidence that the law had been complied with by all those who had any agency in assessing and collecting the

Reeds vs. Morton.

revenue, it is clear that it could not be evidence of facts to be done subsequently, and that too by the person to whom the sale was made.

The 28th section of the act of 1825, above cited, required the certificate given to the purchaser at the tax sale to be recorded; and a subsequent section provided that if lands sold for the taxes were not redeemed within two years from the date of the sale, the auditor should then make a deed for them. The sale in this case took place on the 18th June, 1832, and the certificate bore date the 20th of the same month, and was not placed upon record until the 13th January, 1836. The deed for the land was executed to the purchaser on the 25th day of June, 1834. If the certificate was not recorded before the execution of the deed, it could hardly have been of any avail to have recorded it afterwards. The recording of the deed answered all the purposes designed by a record of the certificate. Here then is a material act to be done by the purchaser, which he has failed to do. The owner of the land had two years within which he might have redeemed it. Had the certificate of sale been seasonably placed on the record of deeds, might not some one have seen it and communicated the fact to the owner? might not some rumor by that means have been spread abroad which would have reached his ears? But the party has withheld this instrument from record, when he was required by law to place it there, and we can see that the owner of the land may have sustained an injury in consequence of this neglect. But according to the principles above asserted, we do not feel ourselves called upon to give reasons why this thing should have been done. He who wishes to obtain an estate worth thousands, for less than ten dollars, under and by virtue of the law, is not to be permitted to ask why he should be required to do this or to do that. It is an answer, that it is required by law. *Ita lex scripta est.* He claims by the law—then by that law let his pretensions be judged. Ives vs. Lynn, 2 Cow. Rep. 505; Tilson vs. Thompson, 10 Pick.

It was maintained in the argument for the defendant, that the object of the law in requiring the certificate to be recorded, was that it might be known who was liable for the subsequently accruing taxes on the land. That the 29th sec. of the act of 1825, above cited, required two descriptive lists of the lands sold for taxes to be sent to each county; one to the clerk of the county court, and the other to the recorder; by this means there was notice communicated to those whose lands had been sold. From the records of this case, it does not appear that the purchaser paid the taxes subsequently accruing, or that the provisions of the above sections were complied with. But even if they had been,

Reeds vs. Morton.

if a list of the lands sold had been sent, one to the clerk of the county court, and another to the recorder, to be kept in their respective offices for the inspection of all interested, still if the certificate had been placed among the record of deeds, would it not have multiplied the chances of bringing to the owner a knowledge of the fact that his land had been sold. Thousands examine the record for deeds, who would never inquire for the list of lands sold for taxes, in which but comparatively few are interested. We are of opinion that the object of the law in requiring the auditor's certificate of sale to be recorded, was not that it might be known who was liable for the accruing taxes on the land sold, but it was designed as one means of communicating to the owner the fact that his land had been sold. That the placing of it on record after the time for redemption was past, was a nugatory act; that it should have been seasonably recorded, and the failure to do so renders it void, and by consequence the auditor's deed.

The other Judges concurring, the judgment will be affirmed.