# DAVIS v. EVANS et al., Appellants.

## Division One, April 1, 1903.

1. **Tax Sale: CERTIFICATE TO PURCHASER: RECORDING: VALIDITY.** Where
   a city ordinance requires the sheriff at a special execution sale under
   a judgment of circuit court assessing against a lot certain benefits,
   to give to the purchaser of the land a certificate of purchase and
   requiring it to be recorded, the requirements as to giving such cer-
   tificate and having it recorded are necessary to the validity of the
   sale, and if no·such certificate is given a subsequent execution and
   delivery by the sheriff of a deed to the purchaser does not transfer
   to the grantee therein any title to the land. ]Following Reeds v.
   Morton, 9 Mo. 878.]

2. ———: ———: ———: ———: **JUDICIAL AND MINISTERIAL SALE:**
   **EFFECT OF JUDICIAL CONSTRUCTION.** Nor is the validity of such sale
   affected by the fact that it is made by an officer under execution
   emanating from a court of·record, instead of by a purely ministerial
   officer, as was the case in Reeds v. Morton, 9 Mo. 878; for the law-
   makers having put the same requirements into the ordinance provid-
   ing for a sale to be made by the sheriff after judgment of court
   which the court in Reeds v. Morton declared were necessary to the
   validity of a tax sale when made by a purely ministerial officer, it
   will be held that the legislative body intended those requirements
   to have the same effect they had previously been judicially declared
   to have.

3. ———: ———: ———: ———: ———: **ROOM FOR DISTINCTION.**
   There is no room in the consideration of the validity of a sheriff's
   deed for the distinction between judicial and non-judicial sales, if
   the sale is made by a judicial officer under a proceeding the parties
   to which really had no interest in the property. In such case the
   procedure in court gives the owner no notice.

4. ———: **RIGHT OF SECOND MORTGAGEE.** The mortgagee under a
   second mortgage has a right to redeem land from a tax sale before
   the sheriff's deed is delivered to the purchaser, and if he takes a
   quitclaim deed from the purchaser at such sale, he can not use it to
   impair the validity of a prior mortgage, but the effect of such
   quitclaim is to give his act the aspect of a redemption from the
   tax burden, he having the right to call the prior mortgagee to an
   accounting for the amount necessarily paid in redeeming. And the
   same rule applies where the grantee in the quitclaim had previously
   become the purchaser of a note called for by the second mortgage,
   which recites that it is subject to the first mortgage.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates*, Judge.

AFFIRMED.

*C. E. Small* and *E. W. Shannon* for appellants.

(1) The lien for the assessment of benefits, the judgment for which was confirmed July 27, 1892, is a prior lien to the deed of trust of plaintiff which was dated and recorded March 7, 1892. The ordinance for the grading of Kansas avenue under which proceedings the real estate in controversy was sold January 16, 1893, was approved May 29, 1891. All the parties interested in the real estate were made parties to the proceedings, the first order for which was made August 3, 1891. Kansas City Charter 1889, art. 8, sec. 5. (2) In Kansas City Charter, 1889, there was no provision for the redemption of property sold for special improvements, nor for the issuance of a certificate of purchase. The amendments to the charter of 1889, adopted February 27, 1892, and after the lien of the proceedings for grading Kansas avenue had attached, provided for the redemption of property and the issuance of certificates of purchase. There is no provision requiring the issuance of certificates of purchase in proceedings for grading, but, even if this were applicable to grading proceedings, such provision is only for the protection of purchasers subsequent to the sale and not for the protection of prior purchasers and incumbrancers. Freeman on Executions, sec. 312. In this case the sheriff was requested to issue a certificate of purchase but refused to do so and would not issue a deed until a year from the date of sale had passed and the sheriff's deed, although acknowledged on March 1, 1894, was not delivered until July 7, 1894. The provision in the city charter that the sheriff should issue a certificate which should

be recorded within six months is simply directory, and the consequent inability of the purchaser at the execution sale to record it does not invalidate the title. Freeman on Execution, sec. 312; Rorer on Judicial Sales (2 Ed.), sec. 718; 22 Am. and Eng. Ency. of Law, p. 620; Jackson v. Young, 5 Cow. 269; Barnes v. Kerlinger, 7 Minn. 82; Jackson v. Page, 4 Wend. 590; O'Brien v. Hashagan, 20 Hun 565; Taylor v. Gladwin, 40 Mich. 232; Page v. Rogers, 31 Cal. 301; Rucker v. Steelman, 73 Ind. 396; Wood v. Morehouse, 45 N. Y. 379. (3) The respondent was not a purchaser or incumbrancer after the sale, but she purchased after the proceedings had been properly instituted and before judgment, and the charter expressly provided that she should be bound by the proceedings, and give her the right to come in and be made a party if she saw fit. K. C. Charter, 1889, sec. 5, art. 8. But according to Freeman, even if she had acquired her rights, after the sale and before the time for redemption expired, she would have had sufficient notice to have put her on inquiry for the following reasons: (a) The condemnation ordinance defined the benefit district which included the property with which she was dealing. All persons are charged with notice of the provisions of this ordinance. Jackson v. Railroad, 118 Mo. 218; Palmyra v. Morton, 25 Mo. 593. (b) As soon as this condemnation judgment was rendered, it was indexed and docketed, as it was required by law to be. This was long before the sale. K. C. Charter, sec. 9, art. 8. (c) As soon as the judgment was rendered, the law required the city treasurer to make a record in his office, showing the amount of the assessment and describing the property. K. C. Charter, sec. 17, art. 9. The evidence shows that this was done. (d) The evidence shows that respondent had an abstract of title which she failed to produce at the trial. Respondent and her husband testified first that their abstract contained a certificate showing taxes and con-

demnation proceedings. If so, they had actual notice of the proceedings. They afterwards tried to deny this, but their testimony being contradictory certainly does not sustain the burden of showing that they were innocent purchasers without notice, which is upon them. Fleckenstein v. Baxter, 114 Mo. 595; Boyd v. Ellis, 107 Mo. 398. (4) Many provisions of the law with reference to execution sales, some of them of infinitely greater importance than the one under consideration, have been held to be directory: (a) The law requires the officer to make a return and report of sale, and to file this in the clerk's office with his execution. This provision of law is simply directory, and the absence of returns does not affect the title. Freeman on Executions, sec. 341; Buchanan v. Tracy, 45 Mo. 437. (b) The law requires the sheriff to advertise the property before selling it. This provision is certainly intended for the purpose of giving the parties interested in the property notice of the sale. Still this provision is directory merely, and the failure to give such notice can not avoid the sale against the purchaser not himself in fault. Freeman on Executions, sec. 286; Draper v. Bryson, 17 Mo. 71; Lenox v. Clark, 52 Mo. 115; Curd v. Lackland, 49 Mo. 451; Young v. Schofield, 132 Mo. 650. (5) Plaintiff knew before the time for redemption expired that this lien existed or she might have known it, had she exercised the slightest diligence; the ordinance had been approved; it had been filed with the circuit clerk; commissioners had been appointed; a verdict had been returned; motions for a new trial had all been filed; all these matters had occurred before March 7, 1892, when the $900 loan was made. Sensenderfer v. Kemp, 83 Mo. 581; Rhodes v. Oatcalt, 48 Mo. 367; Eck v. Hatcher, 58 Mo. 235; Maupin v. King, 47 Mo. 304; Speck v. Riggin, 40 Mo. 405; Tarffe v. Kelley, 110 Mo. 137; Easton v. Doolittle, 69 N. W. 672. (6) Defendant Van Vleck has a title to the north fifteen feet of lot 3, block 2, Graham's addi-

tion; he had a right to protect himself by taking a tax deed to the land.    Childers v. Schantz, 120 Mo. 312; Higgins v. Turner, 61 Mo. 249; Master v. Welsh, 107 Mo. 131; Macklot v. Dubreail, 9 Mo. 477; Mattison v. Andrews, 50 Mo. 551; Funkhouser v. Lay, 78 Mo. 458.

*R. B. Middlebrook* for respondent.

(1)   Defendant J. W. Harlan having been second mortgagee when he bought the tax title from defendant Robinson, he could not by that purchase cut out the first mortgage of the plaintiff.    Woodbury v. Swan, 59 N. H. 22; Chrisman v. Hough, 146 Mo. 111; Goodrich v. Kimberly, 48 Conn. 395; Bank v. Bacharach, 46 Conn. 525.    A party thus interested, in bidding in property at a tax sale, is merely paying the tax, and not acquiring a new title.    2 Desty on Taxation (Ed. 1884), p. 929; Cooley on Taxation (Ed. 1876), pp. 345, 346; Choteau v. Jones, 11 Ill. 322; Whitney v. Gunderson, 31 Wis. 379; Bassett v. Welsh, 22 Wis. 175; McMinn v. Whelan, 27 Cal. 300; Garretson v. Scofield, 44 Iowa 35; Smith v. Lewis, 20 Wis. 350; Ward v. Matthews, 80 Cal. 343; Frank v. Arnold, 73 Iowa 370; West v. Duncan, 42 Fed. 430; Black on Tax Titles (2 Ed.), sec. 279.    (2)   The failure of the purchaser at the tax sale to procure and record a certificate of purchase, and have the same on record for six months before the issue of a sheriff's deed, as required by the charter of Kansas City, invalidated the sheriff's deed by depriving interested parties of a notice which would (if seen) have enabled them to redeem from the sheriff's sale within a year thereafter.    Kansas City Charter 1889, art. 9, sec. 18.    These provisions apply to grading proceedings such as the Kansas avenue grading case, out of which sprang the grading assessment in this case.    Bryant v. Russell, 127 Mo. 429; Bradley v. Judd, 127 Mo. 436.    These provisions are not directory, but mandatory, and the purchaser's failure to

comply with them defeats his tax deed.    Reeds v. Morton, 9 Mo. 887; Cooley on Taxation (2 Ed.), p. 537, sec. 5; Arthurs v. Smathers, 38 Pa. St. 40; Doughty v. Hope, 3 Den. 594; Barnard v. Hoyt, 63 Ill. 341; Jackson v. Este, 7 Wend. 148; Comstock v. Beardsley, 15 Wend. 348; Westbrook v. Willie, 47 N. Y. 457; Wilson v. McKenna, 52 Ill. 43; Hendricks v. Boggs, 15 Neb. 469; Choat v. Phelps, 63 Kan. 762.

VALLIANT, J.—This is a suit in equity, the main object of which is to establish plaintiff's mortgage debt as prior in right to the claims of defendants.    The property in question is real estate in Kansas City, and the rights of the parties respectively grow out of the following transactions in relation thereto.:

March 7, 1892, defendant Evans was the owner of the land; on that day he borrowed $900 from plaintiff's father, and executed his note and deed of trust on the land to secure the loan, which deed was duly recorded that day; plaintiff is now the holder of that note.

August 16, 1892, Evans and wife sold the land subject to the above-mentioned incumbrance to Helen Sherlock, taking from her and her husband a deed of trust to secure a note for $350 given as part payment of the purchase money; those deeds were duly recorded.    .

June 22, 1894, Sherlock sold the land to defendant J. W. Harlan for $50, Harlan in the meantime, that is, April 1, 1894, having purchased the $350 note secured by the second deed of trust.    The deed from Sherlock to Harlan was never recorded.    July 21, 1894, Harlan conveyed the property to his wife; there was no consideration for that deed.

January 5, 1895, Harlan and wife conveyed the land to defendant Johnson, who on the same day executed his note for $800 principal, and ten interest notes, and secured the same by deed of trust on the property.    That was the third deed of trust; it was

duly recorded. Defendant Monks is now the holder of those notes. March 18, 1895, Johnson and wife sold the property to defendant Van Vleck for a consideration stated of $1,500, of which the notes in the last deed of trust mentioned, amounting to $1,040, formed a part, and were assumed by Van Vleck, who executed back a deed of trust to Harlan, trustee for Johnson, to secure the notes given for the balance of the consideration, which notes were afterwards transferred by Johnson to Harlan.

Harlan took possession of the property in May or June, 1894, and held it and collected the rents until Van Vleck purchased, when possession was delivered to him and he has retained it ever since.

There would be no controversy between the parties on the foregoing facts, if it were not for the transaction now to be mentioned.

May 29, 1891, an ordinance of the city, No. 3160, was passed, the purpose of which was to grade Kansas avenue, and to that end proceedings were had in the circuit court as prescribed by the charter of the city for the assessment of damages and benefits. At that date defendant Evans and one Maguire and his trustee Boland, were the only persons shown by the records to have any interest in the property in question, and therefore as to it they alone were made parties to the proceedings. The Maguire interest, whatever it was, seems to have ceased, at least it was not asserted in this case. Those court proceedings were begun August 3, 1891, and resulted in a judgment July 27, 1892, assessing against this lot as benefits the sum of ninety-seven cents. A special execution issued on that judgment December 9, 1892, and the lot was sold by the sheriff thereunder January 16, 1893, to C. T. Gorman for $61. The following provision in the charter of Kansas City in relation to such sales was in force at the time:

"Upon sales made by the sheriff under any such special execution, he shall issue to the purchaser a certificate of purchase, setting forth the substance of such special execution, the date of the sale, the purchaser, the property sold, and the amount bid. If the property so sold be redeemed within one year from the date of such sale by payment to the sheriff of the amount due on the judgment, including interest and costs up to the date of redemption by the owner of or party interested in the said property, no deed shall be given by the sheriff. . . . If the lot or parcel of land so sold be not redeemed, as herein provided, a deed shall be given at the end of one year from the date of said sale by the sheriff to the holder of said certificate. . . . Such certificate of purchase shall be delivered by the sheriff to the purchaser, or his assignee, on payment of the amount bid, which certificate shall be executed and acknowledged by such sheriff before an officer authorized to take acknowledgment of instruments affecting real estate, and shall be filed for record in the office of the recorder of deeds of Jackson county, at Kansas City, within six months after the date of the same." [Pages 155 and 156, Kansas City Charter of 1889, as amended.]

The sheriff refused to give the purchaser the certificate required by that charter provision, and therefore no such certificate was recorded.

June 30, 1894, Harlan obtained by purchase a quitclaim deed from Gorman to this property.

Pursuant to the execution sale the sheriff made a deed to Gorman purporting to convey to her "all the right, title, interest and estate of the said Joe Evans, M. Boland, trustee for Christopher Maguire, of in and to said lot 3, block 2, Graham's addition, an addition to the City of Kansas, now Kansas City, Missouri, that I might have as sheriff as aforesaid by virtue of the aforesaid execution levy and notice." This deed was acknowledged March 1, 1894, but it was not delivered

by the sheriff until July following; it was then delivered to Harlan, who filed it for record July 7, 1894.

While Sherlock owned the property his attention was called by a neighbor to a postal card addressed to the former owner, Evans, informing him that there was a special benefit tax of ninety-seven cents against the lot. Thereupon Sherlock went to the circuit clerk's office and found the records of the proceedings and saw marked in pencil opposite this assessment the word "paid." Afterwards when he heard that the property had been sold he went again to examine the record, but he could not find the entry, was not certain that he found the same book.

In 1897 other proceedings were had in the circuit court affecting this property, looking to the condemnation of land to establish a boulevard in which there was a benefit assessment adjudged against the north fifteen feet off this lot, under execution of which that part of the lot was sold by the sheriff to one Chase, who in turn sold it to defendant Van Vleck. Van Vleck was in possession of the property when those proceedings were had.

The plaintiff makes some charges in her petition of unfair dealing and conspiracy to defraud in connection with the several transfers of this property between some of the defendants, and there is evidence for and against such charges, but in the view we take of the law bearing on the undisputed facts we consider it unnecessary to go into those questions.

The finding and decree were for the plaintiff establishing her deed of trust debt as the first lien on the property and authorizing a foreclosure. Defendants appeal.

I. There is no question but that the plaintiff's deed of trust is superior to the interests of defendants if it was not cut out by the sheriff's sale under execution on the judgment founded on the special taxbill. The regularity of the court proceedings which led up

to that judgment and the issuance of the execution are not questioned.

The main question in the case grows out of the refusal of the sheriff at the time of the sale under execution, in January, 1893, to issue to the purchaser the certificate required by the city charter in such case, and the consequent failure to record such a certificate. It is argued on behalf of appellants that that requirement of the charter was merely directory, subjecting the sheriff, perhaps, to costs, but in no way affecting the title conveyed. In support of that construction of the charter provision we are cited to Jackson v. Young, 5 Cow. 269, and O'Brien v. Hashagen, 20 Hun 565, and text-writers who base their texts chiefly on those cases. A reference to those cases shows that they are so briefly reported that we can gather little of the reasons on which they are founded, and we are by no means satisfied that their facts render them analogous to the case at bar. But whatever construction courts in other States may have put on somewhat similar statutes of their own, this court has long ago laid down its interpretation of such a provision in our law as the one now under discussion. In Reeds v. Morton, 9 Mo. 878, the court had under consideration a section of the statute relating to sales of land for taxes which prescribed that the officer should deliver to the purchaser a certificate which should be acknowledged and recorded like a deed, after which the owner has two years in which to redeem, and if he did not redeem within that period the officer was to give the purchaser a deed. The court held that the requirements as to giving a certificate and having it recorded were essential to the validity of the sale. It was said by the court that the recording of the certificate was one of the most efficient methods of bringing notice to the owner that his land had been sold and that that was the main object of that requirement of the statute. That decision defining the purpose and effect of such a certificate was rendered in

1846 and its correctness has never been questioned in this court. Therefore, whenever the lawmaking power of this State has since then inserted a similar requirement in a statute relating to the same subject, we must understand that the Legislature meant it to have the force and effect as declared in that case.

But it is argued that the court in the case just mentioned was construing a statute relating to a non-judicial sale, whereas we are now considering a sheriff's sale under execution, emanating from a court of record.

In 1846 when that case was decided, sales of land for taxes in this State were not made under judgments of court, and the details then prescribed by law in such proceedings were for the guidance of the executive officers making the sales. But when the Legislature adopted a different system and provided for the bringing into court of the delinquent landowner and the condemning of his land to sale for the payment of taxes, whatever requirements there were in the law under the old system which were brought forward and prescribed to be observed in the new procedure, have just the same effect under the new as they had under the old system, and especially is that so in reference to a requirement, the meaning, purpose and effect of which had been fully explained by judicial interpretation.

If the requirement of the statute construed in the case of Reeds v. Morton, supra, was mandatory and the recording of the certificate essential to the validity of the sale as the court then declared, we must assume that when the lawmakers, dealing with a similar subject, put the same requirement in the city charter, it was intended to have the effect that had before been judicially declared.

Although the condemnation and sale of land for taxes are now conducted under proceedings in court, yet it is often the case that the owner has really no notice in fact of the proceeding and therefore there is not such a great difference between the present judi-

cial and the former non-judicial sale in so far as actual notice is concerned. The case at bar illustrates this. The charter of Kansas City in such proceedings declares:

"It shall be sufficient to bring in the owner of the property or those interested therein, who may be such at the time of the taking effect of the ordinance providing for the improvement, and parties claiming or holding through or under such owners or parties interested, or any of them, shall be bound by the proceedings without being brought in." [Art. 8, sec. 5.]

Under that clause of the charter this condemnation proceeding was conducted without the presence of any one of the parties to this suit except Evans, who, when the suit came on for hearing, had really no interest in it at all.

At the time the judgment was rendered in that proceeding charging upon this lot the payment of ninety-seven cents, there was no one actually a party to the suit who had an interest to the amount of ninety-seven cents in the property. The parties really in interest were chargeable only with a constructive *lis pendens* notice; there was no actual notice. Therefore there is little if any room under the facts of this case, to argue that there should be a different construction of the statute prescribing the terms of a non-judicial sale by an executive officer and one prescribing terms of a judicial sale under such a proceeding. So far as the refusal of the sheriff to give the certificate is concerned, there is really more reason for holding the purchaser at the judicial sale to the strict consequence of that act than there would have been under a non-judicial sale for taxes, because the sheriff in a judicial proceeding is subject to the order of the court in reference to the execution of its process, and if the purchaser is not satisfied with what the sheriff does he can go into court by motion and require the officer to do what is right. We hold that the issuance of a certifi-

cate of sale by the sheriff and the recording of such certificate as required by the charter are essential to the validity of such sale, and those requirements not having been observed in this case the sale was invalid.

II. There is another reason why the sale under execution in this case can not avail the defendants to cut out the plaintiff's prior mortgage.

The city charter, after providing that any party in interest may redeem within one year, declares: "If the lot or parcel of land so sold be not redeemed, as herein provided, a deed shall be given at the end of one year from the date of said sale to the holder of said certificate." [Art. 9, sec. 18.] Before the sheriff delivered his deed, in this case, the defendant Harlan had purchased a quitclaim title to the land from Gorman the purchaser at the tax sale. At that time Harlan held the second deed of trust above mentioned, given by Sherlock to Evans, and also a quitclaim deed from Sherlock. Not only was the plaintiff's mortgage duly recorded before the second mortgage, held by Harlan, had been given, but the deed securing that second lien expressed on its face that it was subject to the plaintiff's $900 incumbrance.

The holder of a second mortgage can not, by buying a tax title, extinguish the lien of the first mortgage. Harlan as second mortgagee had the right under the law to redeem the land from the tax sale before the sheriff's deed was delivered. The purchaser at the sheriff's sale, therefore, was not free to refuse the amount of his bid and costs and keep the title as he might have done on the demand of a stranger. Harlan's right to redeem was a valuable interest in the property and was superior to the purchaser's right to demand a deed of the sheriff. But the second mortgagee can not use such a right to impair the effect of the prior mortgage. In such case it makes no difference whether the second mortgagee sees fit to give his act the aspect of a redemption from the tax burden

or a purchase from the purchaser at the tax sale, the effect as to a prior mortgage is redemption, with right to call the prior mortgagee to an equitable accounting for the amount paid necessary to redeem.

In Chrisman v. Hough, 146 Mo. 102, l. c. 112, the court, per BRACE, J., said: "All that the second mortgagee can in equity and good conscience demand of the prior mortgagee is, that he be reimbursed from the general estate for the sum thus expended in procuring a title which protects the interest of each, and restores the estate to its original standing, so far as their interests therein are concerned." In the same opinion it is also said: "And no distinction on principle can be made between the case where such title is procured at first hands by purchase at the tax sale, and the case where the title is afterwards acquired by the second mortgagee from such purchaser." The same principle is declared also in Frank v. Caruthers, 108 Mo. 569; and Ins. Co. v. Bulte, 45 Mich. 113, l. c. 122.

For the same reason the title acquired by defendant Van Vleck to the north fifteen feet of the lot in question, under the boulevard condemnation proceedings, is also of no effect as to the plaintiff's mortgage. Van Vleck being in possession at the time and enjoying the rents and profits, it was his duty to have paid that assessment and to have prevented the sale.

The circuit court took the correct view of this case. The judgment is affirmed.    All concur.