### OLIVER HUGHES v. THE STATE.

No. 3018.   Decided November 2, 1904.

**1.—Murder in the Second Degree—Charge of Court—Retreat.**

A charge on the doctrine of retreat, on a trial for murder, like a charge on any other defensive matter, is only required to be given when the testimony pertinently raises that phase of case.

**2.—Same—Self-Defense.**

See opinion for statement of a case which does not even invoke a charge on the right of self-defense, much less one on the doctrine of retreat.

**3.—Same—Manslaughter.**

See charge on manslaughter which is held to be an admirable presentation of every phase of the case which appellant could claim on that subject.

Appeal from the District Court of Bell.   Tried below before the Hon. Jno. M. Furman.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The principal State witness, after describing the locality and its surroundings where the homicide occurred, testified that the first he saw of Guess, the deceased, was when he came up from the south of the horse lot and stopped about three feet east of the east corner of the corner post of the south shed. Oliver Hughes, the defendant, was sitting at that time on a scantling or rather 2 x 4 pieces of scantling nailed together; with his back to the center post of the south shed with his face to Mr. Guess and about ten or twelve feet from him. Guess had a milk bucket in his left hand, it was a little tin bucket I suppose and would hold about a gallon. When he stopped he said to the defendant, "Did you kill my dog?" the defendant said, "Yes, I killed him." Mr. Guess said, "What did you kill him for?" and the defendant said, "I killed him because he went in my tent and stole my meat out." Mr. Guess said, "Do you say he went in your tent?" and defendant said, "Yes." Mr. Guess said, "If you say he went in your tent you are a d—m liar." At this time defendant presented his pistol at Guess who fell to the ground with his head toward the southeast corner of the crib or barn. He fell almost flat on the ground with his left side towards the defendant, with his hands extended on the ground and looking up over his left shoulder towards the defendant. When Guess first fell the

defendant stepped up one or two steps and fired at him. Defendant was sitting down when Guess came up, but got up as soon as Guess spoke to him and was standing up when Guess fell. .Witness took hold of defendant after he had fired and wheeled him round to the left, but defendant pulled witness on round and presented his pistol again at Guess and said, "Turn me loose, no man can call me a d—m liar!" Guess soon expired. When we raised Guess up on the bed to undress him, a pocket knife slipped out of his pocket; it was closed. Both defendant and deceased were renters, they both had permission to use the barn of the landlord where the homicide occurred and where they met, defendant to feed his stock and deceased to milk his cow. Defendant proved by his brother communicated threats of deceased to kill defendant for killing deceased's dog the morning of the day before the homicide; whereupon defendant immediately armed himself to defend himself. He also proved that one of his legs is shorter than the other and had had his hip broken when a little boy and was not in good health. He proved his general reputation as a peaceable man. Some of defendant's witnesses also testified that when Guess called defendant a liar, he started towards defendant, he fell and defendant shot him. Defendant's brother testified that he saw a knife in deceased's hand; the knife was closed. Defendant also testified to this and that deceased took a step or two towards him, that defendant pulled his pistol, deceased slipped and fell and that defendant stepped up towards him to see what Guess had in his hands and he saw a knife and defendant then shot deceased. That he shot him to protect himself, that he thought Guess would jump on him and cut him, and that deceased had a knife in his hand when he fell, that he got it out of his right side pocket and that he was trying to get up and come at defendant. On cross-examination State's witness Sam Whatley testified: "No sir, Guess did not advance one step toward Hughes nor did he make any demonstration as if to draw a weapon. Guess fell with his head towards the crib. I cannot say that he slipped and fell, or how he got down, but I- thought he dropped on the ground down out of the way of Hughes' pistol.  *  *  * I did not think from what Guess told me on Sunday that there was going to be trouble about the dog." Charles Whatley for the State testified: "Guess had nothing in his hand but the little milk bucket, and did not make any demonstration as if to hit defendant, or as if to draw a weapon. He was standing where he stopped when he fell and had not moved towards defendant or any one else. Hughes was closer to Guess when he fired the shot, than he was when Guess fell, because he stepped towards him. Guess did not advance on Hughes.  *  *  * I don't know how he happened to fall down. I did not see any knife in his hand, and I am certain he did not have it in his hand."

The court's charge on manslaughter was as follows: "Manslaughter is voluntary homicide committed under the immediate influence of sudden passion, arising from an adequate cause, but neither justified nor excused by law. By the expression 'under the immediate influence of

sudden passion' is meant:   1.   The provocation must arise at the time of the commission of the offense and that the passion is not the result of a former provocation.   2.   The act must be directly caused by the passion arising out of the provocation.   It is not enough that the mind is merely agitated by the passion arising from some other provocation, or a provocation given by some other person than the party killed. 3.   The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering it incapable. of cool reflection.   4.   By the expression 'adequate cause' is meant: such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.   Insulting words or gestures, unaccompanied by violence are not adequate causes.   But insulting words in connection with prior threats accompanied by an apparently threatened attack considered by the jury in connection with all the other facts in evidence may be considered by the jury in determining as to whether the same would commonly produce such a degree of anger, rage, resentment, or terror, in a person of ordinary temper sufficient to render the mind incapable of cool reflection and thereby create 'adequate cause.'   In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause existed to produce the state of mind referred to, that is, of anger, rage, sudden resentment or terror sufficient to render it incapable of cool reflection, but also that such state of mind did actually exist at the time of the commission of the offense.   Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation (if any) to consider in connection therewith, all the facts and circumstances in evidence in the case, and if you find that by reason thereof the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause (if any) producing such condition.   If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon, or instrument reasonably calculated and likely to produce death, by the mode and manner of its use, in a sudden transport of passion aroused by adequate cause, as the same is herein explained, and not in defense of himself against an unlawful attack reasonably producing a rational fear or expectation of death; or serious bodily injury, did shoot with a pistol and thereby killed Silas Guess, the deceased, as charged in the indictment, you will find the defendant guilty of manslaughter and assess his punishment in the State penitentiary for any term of not less than two nor more than five years."

*Saunders & Saunders,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty years confinement in the penitentiary, hence this appeal.

Appellant excepted to the charge of the court in the motion for new trial, among other things, because the same failed to submit to the jury a charge on the doctrine of retreat. A charge on this subject, like a charge on any other defensive matter, is only required to be given when the testimony pertinently raises that phase of case. While the court gave a charge on self-defense, yet an examination of this record, would hardly require the court to have given such a charge. However, appellant had the benefit of this. But was the court in this connection required to instruct the jury that appellant was not bound to retreat before exercising his right of self-defense. True, appellant proved threats against him by deceased which were communicated to him. Where a killing is shown, threats alone do not constitute self-defense; there must be some overt act done to justify the killing. The record discloses that appellant had killed deceased's dog a few days before the homicide, and that deceased, when informed by appellant's brother that appellant had killed the dog, said he would kill appellant because of that. At the time of the homicide, all the witnesses appear to agree that deceased came to the lot where appellant was, evidently to milk a cow. Seeing appellant there, he asked him if he killed his dog. To which defendant replied that he did; that he killed him because the dog had broke into his tent and knocked off the lantern. Defendant's witnesses say that at this juncture deceased said it was a damn lie; that his dog did not go into his tent. State's witnesses show that deceased at this time made no hostile act or demonstration toward appellant, but that appellant pulled his pistol; and deceased on some account fell down—one witness says he fell down, he thought to dodge the shot; at any rate all of the witnesses agree that he fell down. State's witnesses show he had no weapon in his hand. Defendant and his brother testified that when he fell he had a knife in his hand, but that it was closed. Witnesses all agree that at this time, after deceased had fallen, appellant shot him in the left side, the ball evidently penetrating deceased's heart, and he died instantly. Of course, if the testimony of the defendant's own witnesses suggest that a charge on the doctrine of retreat should be given, a failure of the court to give such a charge would be error. Does their evidence require such a charge? They say that deceased evidently advanced a step or two toward appellant, but stumbled on something and fell down. Both witnesses agree that at the time deceased was shot he lay prone on the ground with a closed knife in his hand. Appellant says in his evidence he shot him because he was afraid he would jump on him, and cut him; that he was trying

to get up and come at him. It occurs to us that this evidence does not even invoke the right of self-defense. Deceased had fallen on the ground, but had not gotten up; he was impotent to harm appellant, who in the meantime had drawn and presented his pistol. Deceased was absolutely in his power, and before he could possibly harm or injure him it was necessary for him to get up on his feet and open his knife, and then advance to appellant. But even if self-defense is in the case, we fail to see how the doctrine of retreat was involved. Hunt v. State, 33 Texas Crim. Rep., 252; Connell v. State, 73 S. W. Rep., 512; Montgomery v. State, 77 S. W. Rep., 788.

The charge on manslaughter is criticised. We have examined the charge, and in our opinion it is an admirable presentation of every phase of the case which appellant could claim on that subject. The court gave a charge on the appearance of danger. Even if self-defense was involved in the case, defendant's charge on that question was not necessary. We have examined the evidence in this case, and in our opinion it amply supports the verdict of the jury. There being no error in the record, the judgment is affirmed.

*Affirmed.*